## Richmond.

### HIRAM PRICE *v.* THE COMMONWEALTH.

#### April 12th, 1883.

1. CRIMINAL PROCEEDINGS—*Indictment—Verdict.*—On an indictment for maliciously shooting with intent to kill, &c., one S., the jury return their verdict: "We, the jury, find the prisoner guilty of unlawful shooting with intent to kill, as charged in the indictment, and fix the term of imprisonment at three years in the penitentiary." The verdict is to be read in connection with the indictment, and therefore sufficiently indicates the person shot.

2. IDEM—*Accused—Witness—Statute Construed.*—Acts 1881–2, chapter 228, section —, declares that in prosecutions for certain offences, "the accused may be sworn and examined as a witness in his own behalf." The object was to afford him opportunity to testify or not, as his interest might dictate, and not to deprive him of his right to deny his guilt by plea and rest upon the legal presumption of innocence.

3. IDEM—*Prosecuting Attorney—Exception.*—Where in such case accused does not testify, it is improper for prosecuting attorney to comment on that fact. But if exception is not taken thereto till after verdict, it is too late, unless under all the circumstances, the court can see that a proper verdict has been rendered and the accused not injured by the comment.

Error to judgment of circuit court of Washington county, refusing Hiram Price a writ of error to a judgment of the county court of said county, rendered November 20th, 1882, sentencing him to three years' imprisonment in the state penitentiary for unlawfully shooting John Stroupe with intent to kill. The opinion states the facts.

*White & Buchanan, F. A. Humes,* and *Daniel Trigg,* for the plaintiff in error.

*Attorney-General F. S. Blair,* for the commonwealth.

HINTON, J., delivered the opinion of the court.

The plaintiff in error, Hiram Price, was indicted at the November term, 1882, of the county court of Washington county, for unlawfully, feloniously and maliciously shooting one John Stroupe, with intent to maim, disable, disfigure and kill, &c. Upon the trial the jury returned a verdict in the following words, viz: " We the jury find the prisoner guilty of unlawful shooting with intent to kill as charged in the indictment, and fix the term of imprisonment at three years in the penitentiary." Thereupon, the prisoner, by counsel, moved in arrest of judgment and also moved the court to set aside the verdict and grant him a new trial. The county court overruled both motions and rendered judgment in accordance with the verdict. To this action of the county court the prisoner filed a bill of exceptions. He then applied to the circuit court of Washington county for a writ of error which was refused. Whereupon he was allowed a writ of error, upon his application, by one of the judges of this court.

Although several errors have been assigned here, it is only deemed necessary to notice two of them.

The first of these is, that the judgment fails to state whom it was that the plaintiff in error shot. This we do not regard as material in any event. As, however, the judgment, so far as we can discover from the record, is in the usual form, we presume that it was intended to say that the verdict was liable to objection for that reason. So regarding it, we have only to observe that the point has been heretofore passed upon by this court and held to be unsubstantial. As was said in *Hoback's Case*, 28 Gratt. 924, " a verdict in a criminal case must always be read in connection with the indictment." If it be so read in this case, there cannot be the slightest doubt as to whom the person shot was.

The second assignment of error is, however, one of more importance. It is that the commonwealth's attorney commented upon the fact that the prisoner had not testified in the case as

he was permitted to do by the statute. This conduct on the part of an officer of the court was certainly improper, and ought to have been promptly checked by the presiding judge.

The statute, ch. 228, Acts 1881–'82, p. 238, provides that in all prosecutions for certain named offences, of which the offence in this case is one, "the accused may be sworn and examined as a witness on his own behalf."

The sole purpose of this enactment, it is obvious, was to give to the accused, who alone could know the true state of the case and the explanation of many of its seemingly inculpatory circumstances, the opportunity to testify or not as his interests might dictate. Before the passage of the statute the accused had the right to deny his guilt and to rely upon the legal presumption of innocence which attaches to every person charged with crime until proved to be guilty, and the statute was not intended to deprive him of that right. It can never be made a means for depriving the prisoner of this presumption of innocence, as it inevitably will be if the courts and their officers are permitted to comment upon the failure of the accused to testify. This objection, however, cannot avail anything to the plaintiff in error in this case, for the reason that he failed to except in proper time. It comes too late, after verdict, if the court can see that under all the circumstances a proper verdict has been rendered. *Bull's Case*, 14 Gratt. 613; *Read's Case*, 22 Gratt. 924; *Stoneman's Case*, 25 Gratt. 905; Whart. Cr. Pl. & Pr. (8th ed.) § 577. From the certificate of evidence in this case it appears that John Stroupe, the person who was assailed by the prisoner, and who on the Saturday night preceding this encounter had been abused by the prisoner, at the house of a lewd woman, was passing along on his way home in the Knobs in Washington county, when he heard some one hollow in the direction of one Theophilus Stroupe's house. That John Stroupe, finding out who it was, came down to where the prisoner and one Jacob Saltz and Moses South, the two last being witnesses, were. That Stroupe, who was unarmed, said to the prisoner that they had had some difficulty on Satur

day night, and that they were now in the road and could settle it. That thereupon the prisoner, who was about three steps from Stroupe, replied that "they could do it d—d quick," and about the same time commenced firing at Stroupe. That when the first shot was fired, they were about three steps apart; when the second shot was fired, they were about four feet apart; and that when the third and last shot was fired, they were from four to five feet apart. That the third shot struck Stroupe in the left side and ranged towards the front and downward to his bowels. Now, under these facts, according to all the authorities in this state, if Stroupe had died the prisoner might have been properly convicted, not only of murder, but of murder in the first degree. *Whiteford's Case*, 6 Rand. 810; *Jones's Case*, 1 Leigh, 654; *Hill's Case*, 2 Gratt. 599; *Howell's Case*, 26 Gratt. 995; *Nelson Mitchell's Case*, 33 Gratt. 872. And, according to *Read's Case*, 22 Gratt. 925, in every such case, if the wounded man survives, it is a case of *malicious* shooting with intent to kill. For, in such case, the purpose to kill would be inferred from the deliberate use of such a weapon under such circumstances. *Hill's Case*, 2 Gratt. 599; *McDaniel's Case*, *ante* page 281. And yet, in this case, the jury did not find the prisoner guilty of *malicious* shooting, as they might well have done, but guilty of unlawful shooting, and have fixed his imprisonment at the short period of three years in the penitentiary. It would seem to be almost demonstrable that the prisoner was not injured by the remarks of the commonwealth's attorney on his refusal to testify, and so the judge below certifies that he is of that opinion.

I am of opinion that there is no error in the judgment of the county court, or in the judgment of the circuit court. The judgment of the circuit court must, therefore, be affirmed.

*Richardson, J.,* dissented.

JUDGMENT AFFIRMED.