## MORRIS v. HUBBARD. Sheriff.

1   In an action by a mortgagee to recover possession of property taken by a sheriff under an execution in favor of a creditor of the mortgagor, where the question at issue was whether the property was owned by the partnership making the mortgage or by one of the members thereof, all the partners testified that the partnership had never owned the property, but they were contradicted by declarations in the mortgage to plaintiff and a former mortgage to another party, by the admission of one partner that he had testified in a former action that the partner who executed the mortgage to plaintiff had previously executed a bill of sale to the partnership, and by the fact that this bill of sale was of record when plaintiff's mortgage was executed. *Held*, that there was such conflict in the evidence as to require the submission of the issue to the jury, and to support their finding that the partnership owned the property.

2. Where plaintiff claimed possession of property under a chattel mortgage, which stated that the property was owned by a partnership, and that plaintiff was to have immediate possession under the mortgage, the subsequent admission of testimony that the partner making the mortgage had made oral declarations to the same effect was harmless, and therefore not reversible error.

3. Where plaintiff brought action to obtain possession of property of which he had formerly had possession under a mortgage, and which had been seized by a sheriff under an execution in favor of a creditor of the mortgagor, plaintiff was entitled to a lien for certain advances made subsequent to the mortgage, and not covered thereby, even though they were not filed as required by law, since plaintiff's possession of the property was sufficient notice to creditors.

4. Where one of the members of a firm dealing in race horses was given a power of attorney to act for the firm, and, acting thereunder, mortgaged the horses to pay a judgment for which they were about to be sold, and agreed with the mortgagee that the horses should be entered in races, and the mortgagee should advance the entrance fees and have a lien on the horses therefor, such agreement was not beyond the partner's authority, so as to make evidence thereof inadmissible in an action by the mortgagee to recover possession of the horses from a sheriff who had seized them under an execution in favor of a creditor of the mortgagors.

5. Where plaintiff sued to recover possession of personal property, which he claimed under a mortgage, and it was shown that a part of the property had been advertised and sold at auction by him, such sale will be presumed to have been lawful, in the absence of evidence to the contrary, and defendant will be entitled to credit for the amount realized by the sale, and not for the value of the property sold.

6. Where, on appeal, exceptions are taken to the remarks of an attorney to the jury, it must be shown by affidavit that such remarks were made, and, in the absence of such showing, the exceptions will not be considered.

(Opinion filed May 4, 1901.)

Appeal from circuitc ourt, Minnehaha county. Hon. Joseph W. Jones, Judge.

Action in claim and deliverey by John S. Morris against Chelsea W. Hubbard, as sheriff of Minnehaha county. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

*Keith & Warren,* for appellant.

*Aikens & Judge,* for respondent.

HANEY, J. It is alleged in the complaint that plaintiff is the owner and entitled to the immediate possession of certain described personal property, by virtue of having a special ownership therein, arising as hereafter alleged: That on September 7, 1894, at Wichita, Kan., J. E. Bruce, Jr., and W. L. Bruce, partners as Bruce Bros., executed and delivered to plaintiff the following instrument in writing: "Know all men by these presents that we, the undersigned, J. E. Bruce, Jr., and W. L. Bruce, partners as Bruce Brothers, in consideration of the sum of $929.08, have this day sold to John S. Morris the following described personal property, now situated at Sedgwick county, Kansas, to-wit: * * * And the said Bruce Brothers hereby guaranty that, at the deliverey of this bill of sale, they are the owners of said property, free and clear of all incumbrances whatever, and that they will warrant and defend the same in the peaceable possession of the said John S. Morris. In witness whereof the said grantors have hereunto set their hands this 7th day of September, A. D. 1894. [Signed] Bruce Brothers, by W. J. Bruce, Their Attorney in Fact. W. J. Bruce." That on the same day, at the same place, and as a part of the same transaction, the plaintiff made and entered into the following agreement with Bruce Bros, and W. J. Bruce: "This agreement entered into this 7th day of September, 1894, between John S. Morris, party of the first part, and J. E. Bruce, Jr. and W. L. Bruce, partners as Bruce Brothers, and W. J. Bruce, parties of the second part, witnesseth: That whereas, the said Bruce Brothers have this day executed to the said

John S. Morris a bill of sale for the following described personal property, to-wit: * * * And whereas, the said bill of sale was executed to said John S. Morris to secure the payment of a loan for the sum of nine hundred twenty-nine and 8-100 dollars, this day furnished the said Bruce Brothers by the said John S. Morris: Now, therefore, it is agreed, by and between the parties hereto, that the said personal property shall be held as security for the repayment of the said money as hereinafter provided, said sum of money to bear interest from this date at the rate of 12 per cent. per annum, and to be paid on or before one year from the date thereof: provided, however, that the said Bruce Brothers may at any time pay a part of said sum of $929.08, and interest thereafter shall only be charged and collected upon the amount remaining unpaid from the date of such payments, and payments of not less than $25 may be made at any time upon these conditions. Upon the payment of the full sum of $929.08, with interest at the rate of 12 per cent. per annum, as above provided, the said John S. Morris shall return to the said Bruce Brothers, their agents or their assigns, all of the above-described personal property, but the said Morris is not to be held responsible for any accidents or abuse of said animals, or the death of any or all of them. It is further agreed that such of the horses above mentioned as shall be deemed desirable and suitable for that purpose, and shall be mutually agreed upon by the said John S. Morris and W. J. Bruce, shall be entered upon such circuits, courses, and race tracks as the said parties may agree upon, for the seasons of 1894-95, in the name of the Cherokee Stock Farm, the said W. J. Bruce to have the entire charge and management of the said horses upon the circuits, courses, and race tracks so entered, or, in the case of the death or the sickness of the said W. J. Bruce, by some competent trainer to be selected by the said Morris. It is further agreed

that until payment of said sum of money and interest and the termination of this agreement all of said horses shall be kept upon the said Cherokee Stock Farm, near the town of Caney, Kansas; the said W. J. Bruce, however, to have the charge and management of said property upon said stock farm. The entrance fee in all races for the seasons of 1894-95 shall be paid by the said Bruce Brothers, or advanced by the said Cherokee Stock Farm, and taken out of the purses, or refunded by Bruce Brothers; and any sum advanced in this way, or to reinstate, shall constitute a lien upon said stock until repaid; and all purses and premiums earned by the said horses shall belong to the said Bruce Brothers, but shall be applied upon the said sum due the said John S. Morris. In witness whereof the said parties hereto have set their hands and seals this 7th day of September, 1894. [Signed] John S. Morris, Bruce Brothers, by W. J. Bruce, Their Attorney in Fact. W. J. Bruce." That plaintiff, on said 7th day of September, 1894, at the place aforesaid, took immediate possession of all the personal property described in the aforesaid bill of sale and agreement, and plaintiff has ever since continued in the actual possession of said personal property, except that portion thereof which was unlawfully, and against the consent of the plaintiff, taken from his possession on or about August 26, 1895; that the personal property so taken from plaintiff's possession is of the value of $2,000; that before this action was commenced plaintiff demanded the possession of said personal property from the de·fendant, and the defendant refused to deliver the same to plaintiff; that the defendant is the acting sheriff of the county of Minnehaha, State of South Dakota; that the debt to secure which said mortgage was given is due and unpaid, and the amount due under said mortgage is $3,000. The answer contains a general denial, and alleges justification under an execution issued out of the circuit court upon

a judgment in favor of W. H. H. Beadle against Bruce Bros, and
W. J. Bruce. The jury found all the issues in favor of the plaintiff;
found that he is entitled to the immediate possession of the person-
al property described in the complaint, by virtue of special owner-
ship therein, as alleged in the complaint; that the value of such
personal property is $2,550, and that the value of plaintiff's inter-
est therein is $1,555.41. Judgment was rendered accordingly, a
new trial was denied, and defendant appealed.

When the bill of sale and contract set out in the complaint were
executed the property mentioned therein was at Wichita, Kan., in
possession of W. J. Bruce, and mortgaged to one Stanley. The
Stanley mortgage was satisfied with the proceeds of the loan from
plaintiff, and the property, consisting principally of race horses, was
taken to the plaintiff's ranch in the Indian Territory, known as the
"Cherokee Stock Farm," where the horses were kept until the begin-
ning of the following racing season, when a portion of them were
shipped to various western cities, where they were entered in races
in the name of the Cherokee Stock Farm. Subsequently they were
taken to Sioux Falls, without plaintiff's knowledge or consent, and
were there seized by the defendant, as sheriff, under an execution
issued out of the circuit court on a judgment in favor of W. H. H.
Beadle against Bruce Bros. and W. J. Bruce. It is conceded that
the conveyance to plaintiff was intended to operate as a mortgage of
personal property, and that under the law of Kansas it is absolutely
void as against the creditors of the mortgagors, unless it was accom-
panied by an immediate delivery, and followed by an actual and
continued change of possession of the property mortgaged. Under
the charge of the court below, the jury necessarily found that the
mortgaged property was owned by Bruce Bros., and that there was
an immediate delivery, followed by an actual and continued change

of possession.  Appellant contends that these findings are not sustained by the evidence.  It is undisputed that the horses were immediately shipped from Wichita to the plaintiff's ranch, in his name, and that they were shipped about the circuit in his name, and at his expense, but they were, during all this time, receiving the personal care and attention of W. J. Bruce.  Assuming, as contended by appellant, that W. J. Bruce could not act as plaintiff's agent if he was the owner of the property when the mortgage was made, the question of immediate delivery and continued change of possession depends upon whether W. J. Bruce or Bruce Bros, owned the property when it was hypothecated to the plaintiff.  This precise question of fact was so submitted to the jury that they must have found that Bruce Bros. and not W. J. Bruce then owned the property.  Was the evidence sufficient to support such finding?  Each member of the firm of Bruce Bros, testified that the firm never owned any of the property, and that none of it was ever in the possession of either of its members.  W. J. Bruce testified to the same effect.  This testimony, however, is contradicted by the declarations of W. J. Bruce in the bill of sale delivered to the plaintiff;  it is contradicted by his mortgage to Stanley;  it is contradicted by the fact that a bill of sale conveying the same property from W. J. Bruce to Bruce Bros. was of record when plaintiff's mortgage was executed;  and it is contradicted by the admission of one member of the firm of Bruce Bros. that he had formerly testified on the trial of an action in Kansas involving the same property, with reference to the last-mentioned bill of sale, as follows:  "Prior to the 25th day of May, 1894, W. J. Bruce was indebted to Bruce Bros. in about the sum of twelve thousand dollars for money advanced and merchandise sold to him. On the 25th day of May, 1894, W. J. Bruce made and delivered to Bruce Bros, a certain bill of sale for eleven horses, and buggy and

cart and sulky, harnesses, and blankets. The bill of sale was given in payment of his indebtedness to Bruce Bros. mentioned above, and the above-named property covered by said bill of sale is now the property of Bruce Bros. This property is now in Wichita, in the State of Kansas." On the trial of the case at bar all of the brothers testified that this last-mentioned bill of sale was intended to operate as a mortgage, and that possession was never taken by the mortgagees thereunder. All agree that W. J. Bruce once owned the property. The recorded bill of sale from him to the firm, absolute in form, was *prima facie* evidence of title in Bruce Bros. There was clearly such a conflict in the testimony as required a submission to the jury, and its verdict cannot be disturbed on the ground of insufficiency of evidence.

It is contended that the court below erred in receiving in evidence the declarations and statements of W. J. Bruce, and conversations had with him by plaintiff and other persons. The declarations and statements objected to are, so far as we have been able to discover, to the effect that Bruce Bros. owned the property, and that the plaintiff was to have possession of it upon making the loan to W. J. Bruce. There are several grounds upon which these rulings of the circuit court might be sustained. One only need be given. The declarations by W. J. Bruce that Bruce Bros. owned the property, and that plaintiff was to have possession, are contained in the bill of sale and written agreement constituting the mortgage upon which this action is based, in clear and explicit terms. The fact that he had made such declarations was established beyond controversy when the rulings complained of were made, and therefore they could not possibly have prejudiced the rights of defendant.

It is contended that the evidence of the payment of entrance fees on the part of the plaintiff should have been excluded for two

reasons: "(1) Plaintiff did not have the actual possession of the property at the time the entrance fees were advanced. The agreement for the advancement of entrance fees was not filed as required by law, and was not notice to creditors of the plaintiff's claim for entrance fees. (2) W. J. Bruce had no authority from Bruce Bros. to pledge or mortgage the horses for entrance fees."

It follows, from what has been heretofore said on the subject of possession, that the first objection is without merit. The claim for entrance fees stands on precisely the same ground as every other obligation secured by the plaintiff's lien. It is conceded that there was no record notice to defendant. Plaintiff's lien depends alone upon possession. If there was an immediate delivery and continued change of possession, the property was held as security for the performance of all the terms of the written contract between the plaintiff and W. J. Bruce. The intent of the parties respecting entrance fees is beyond controversy, and, as heretofore shown, the verdict determines the question of possession. When plaintiff made the loan to W. J. Bruce, he was shown the following telegram and power of attorney:

"Dated at Portland, Oregon, 8-31, 1894. To W. J. Bruce: Mortgage stock for amount sufficient to settle case. Bruce Bros."

"Know all men by these presents that we, Bruce Bros., of the city of Portland, in the county of Multnomah, and State of Oregon, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, W. J. Bruce, of Wichita, Kansas, my true and lawful attorney, for us, and in his name, place, and stead, to all real, personal and mixed property, of any and all kinds whatsoever, in the state of Kansas, giving and granting unto him, said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and

about the premises, as fully, to all intents and purposes, as we might and could do if personally present, with full power of substitution and revocation; hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do, or cause to be done, by virtue thereof. In witness whereof we hereunto set our hands and seal this 12th day of June, 1894. James E. Bruce, Jr., of and for the Firm of Bruce Bros. Executed in presence of F. L. Fields. [Acknowledgement.]"

It is admitted that in an action pending in Kansas a judgment was rendered in favor of one Armstrong against W. J. Bruce, the members of the firm of Bruce Bros., and others for $1,000, and that the same was declared to be a first lien upon the property subsequently hypothecated to the plaintiff; that an order was made for the sale of the property, and that it was advertised for sale, the sale to take place August 17, 1894; that on September 1, 1894, W. E. Stanley advanced $749 to settle the Armstrong claim and release the property; that on the same day Bruce Bros., by W. J. Bruce as their attorney in fact, mortgaged the property to Stanley to secure the sum so advanced and that W. J. Bruce executed the mortgage to Stanley in pursuance of the telegram above set out. As heretofore stated, the loan from plaintiff was made for the purpose of satisfying the Stanley mortgage, and the funds furnished by the plaintiff were so applied. The firm of Bruce Bros. consisted of James E. Bruce, Jr., who resided at Portland, Or., and W. L. Bruce, who resided at Yankton, in this state. It is shown by defendant's testimony that James E. had entire management of the firm's business. He testified that W. J. Bruce was authorized by the firm to borrow whatever amount he needed on the property in controversy. No evidence was offered for the purpose of proving that W. J. Bruce exceeded his authority. He was in Kansas with

a string of race horses, which were about to be sold to satisfy the lien of a judgment. He made a mortgage to Stanley for the purpose of satisfying this lien, and six days later borrowed money of the plaintiff to satisfy the mortgage. In all this he clearly acted within the scope of his authority. The stipulation regarding entrance fees was a reasonable incident to the plan adopted for raising money to protect the property from being taken to satisfy a lawful indebtedness judicially declared to be a lien thereon. It was evidently the intention of Bruce Bros. that W. J. Bruce should manage the property as he deemed best. The usual way to make race horses productive is to enter them in races. The plan agreed upon between plaintiff and W. J. Bruce was well calculated to conserve the property and enable the latter to remove the incumbrance thereon. His conduct was such as any prudent person would expect under the circumstances and was clearly within the authority conferred by his principal. There was no error in receiving evidence of entrance fees advanced by the plaintiff, especially in view of the fact that the question of W. J. Bruce's authority in this respect was submitted to the jury under proper instructions, and if any such advances were considered in ascertaining the amount of plaintiff's recovery, the jury must have found that he had the necessary authority.

It is contended that the value of the property left on the Cherokee Stock Farm, and sold by the plaintiff, should have been allowed as a credit on the mortgage debt. It appears that certain of the mortgaged horses remained at the plaintiff's ranch from September 8, 1894, until February 20, 1896, when they were advertised and sold at auction. Concerning this branch of the case the court charged the jury as follows: "If that property was sold openly, and notice was published, and it was a fair sale, and fairly done, then the amount of money that the property brought would be the meas-

ure of the credit. The defendant would be entitled to a credit only for the amount that the property sold for if the sale was had fairly and honestly, openly, and after due notice was given." The only evidence offered touching the disposition of the property retained by the mortgagee was given by the plaintiff, the substance of which has been stated. In the absence of any evidence to the contrary, it should be presumed that the plaintiff acted lawfully. Therefore the mortgagors were only entitled to credit for the amount for which the property was sold, and the charge of the court was more favorable to the defendant than it should have been.

It is suggested that counsel for plaintiff used improper language in addressing the jury. Where the application for a new trial is made for an irregularity of this nature, it must be made upon affidavits. Comp. Laws, §§5088,5089. The record affirmatively shows that the matter was not so presented. There is nothing before us but the allegations and exceptions of the attorney for the defendant. The fact that an attorney states to the court that he objects to certain statements, reciting such statements, does not establish the fact that opposing counsel made the statements excepted to. Hence the necessity of an affidavit setting forth and proving the use of the language to which exception is taken. If there was any impropriety in the conduct of plaintiff's counsel, it is not available to the defendant, because the record does not present it for review. Attention has been given to the charge of the court. We believe it fairly and correctly submitted every material issue in the case, and that the judgment of the circuit court should be affirmed.