STATE, Respondent, v. WOLFE, Appellant.

(266 N. W. 116.)

(File No. 7743.   Opinion filed March 21, 1936.)

*H. F. Fellows,* of Rapid City, and *John T. Heffron,* of Deadwood, for Appellant.

*Walter Conway,* Attorney General, *Benj. D. Mintener,* Assist-

ant Attorney General, and *Francis Parker,* of Deadwood, for the State.

BECK, Circuit Judge. ■ This case now comes before this court upon a second appeal. On the previous appeal the judgment and an order denying a motion for a new trial were reversed, with the direction that count II, contained in the information, be dismissed. A new trial was granted as to count I remaining in the information. A sufficient general statement of the facts will be found in 61 S. D. 195, 247 N. W. 407 (1933), where our former decision is recorded. Such opinion has become the law of this case so far as applicable to the record now before us. Downs et al v. Bruce Ind. Sch. Dist. etc. (1927) 52 S. D. 168, 216 N. W. 949.

Upon the case being remanded to the lower court, an order was granted changing the place of trial to Pennington county. The defendant and appellant was duly tried in said county; and the jury having returned a verdict of guilty as charged under count I of the information, judgment was entered accordingly. An appeal was duly perfected from such judgment, and an order denying a motion for a new trial. Upon said appeal, ninety-three errors are assigned as grounds for a reversal of the trial court. For the sake of brevity, these various assignments of error may be grouped, for the purposes of this opinion, as they raise but a few general questions of law that we deem worthy of consideration.

We held, upon the former appeal, that all transactions set forth in the bill of particulars, furnished by the state under an order of the trial court, were barred by the statute of limitations, except what was termed the "Conard transaction" alleged to have taken place on or about January 8, 1927, but which, according to the undisputed evidence, was completed on March 7, 1925. This was a simple transaction involving $500, and complete in itself; the details of which are fully set forth in our former opinion to which reference is now made. The charge based upon the "Conard transaction" is one of embezzlement of public funds. Under the established law of this case, all other transactions included in count I of the information are barred by the statute of limitations; so it is with the "Conard transaction" alone that we are now concerned.

■ The state offered in evidence, upon the second trial, Exhibit No. 52, which the record discloses was the same instrument

designated Exhibit 48 upon the former trial; and which we held was inadmissible under the record upon the prior appeal. This instrument was prepared by one Myers, a state accountant, who had made an audit of the records in the offices of the county treasurer and county auditor of Lawrence county, and covered the tax records of said county for the years 1918 to 1927 inclusive; it contained general information reflecting book shortages and discrepancies between the gross amount of tax collections as shown by the tax receipts issued and the amount of cash entered upon the cashbooks. The instrument was prepared by the witness personally from the records of Lawrence county, which records were received in evidence as a part of the state's case. The court admitted this exhibit, over proper objections interposed by appellant, solely for the purpose of permitting the witness to use it to refresh his recollection while giving oral testimony. The exhibit was not permitted to go to the jury room. We are inclined to the view that it was not error to permit the witness to use this exhibit solely for the purpose of refreshing his memory, so long as its use was confined to proper, competent, and pertinent transactions. State v. Ewert (1928) 52 S. D. 619, 219 N. W. 817; State v. Clements (1901) 82 Minn. 434, 85 N. W. 229; Loose v. State (1903) 120 Wis. 115, 97 N. W. 526.

By numerous and appropriate assignments of error the appellant has challenged the correctness of the trial court's rulings in admitting evidence of prior alleged transactions and shortages under the guise of showing intent, motive, and system.

The state offered evidence of a general character showing alleged shortages resulting from discrepancies between the gross amount of the tax receipts issued by the county treasurer and the amount of cash entered upon the cashbooks of Lawrence county during the years 1918 to 1927 inclusive. No attempt was made to show that the appellant actually obtained the physical possession of, or appropriated, the money reflected by these shortages; nor does it appear from the record just what became of the money, if in fact it was collected. Some specific transactions were dealt with, principally the "McCord Brady items," the "J. Lowe items" and the "W. E. Lowe items." The transactions involving these items occurred in 1921 and 1922 and at a time when appellant was

county treasurer of Lawrence county. The record shows that tax receipts were manipulated and records juggled; and most, if not all, of the records showing such manipulations are in the handwriting of the appellant.

The general rule is: "that when a man is put upon trial for one offense, he is to be convicted, if it all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime, wholly unconnected with that for which he is put upon his trial, must be excluded." 8 R. C. L. 198.

■ ■ There is, however, an exception to the general rule that applies to embezzlement cases and kindred offenses. That exception is that the state may show prior acts and conduct on the part of the accused of like character in order to establish intent, motive, and system. That is, the state may introduce evidence tending to show prior acts of embezzlement and misconduct of the kind involved in the case on trial, provided, however, that such prior acts and conduct bear a direct relation to the offense for which the accused is on trial. While this case is in the twilight zone because of the fact that the appellant was on trial for the "Conard transaction" alone, yet we believe the case comes within the exception and the rule announced in State v. Ewert, supra. Also, see, State v. Downer (1912) 68 Wash. 672, 123 P. 1073, 43 L. R. A. (N. S.) 774, also the note in the L. R. A. volume following the reported case; and note, 62 L. R. A. beginning at page 264; also State v. Heaton (1927) 56 N. D. 357, 217 N. W. 531.

The court properly limited the purpose for which this evidence was received in its instructions to the jury, and while much of the evidence was remote and somewhat vague, yet we believe no prejudice resulted and that the case should not be reversed because of the reception of this evidence.

Error is predicated upon alleged misconduct of the state's counsel and improper comment on the part of the trial court and the prosecutors when the state presented its case to the jury. The following quoted from the record fully discloses the situation with which we are now concerned:

"That during the opening argument to the jury counsel for the state in commenting upon the failure of the defendant to take the

witness stand and testify on his own behalf said: 'That the defendant Wolfe has failed to take the witness stand and explain, and the only reason Wolfe has not taken the witness stand and denied his connection with the charge against him is because he is guilty and he knows he is guilty.' That objection and exception was immediately taken by defendant's counsel to such statement as misconduct of counsel and outside and in violation of the defendant's statutory and constitutional rights. That immediately upon exception being taken the court overruled such exception of the defendant and said to the jury: 'The jury will not, of course, take the statement of the States Attorney into consideration as a fact of any evidence in the case.' Exception allowed.

"That in his closing argument to the jury, Francis J. Parker, special prosecutor for the state, in commenting upon the failure of the defendant to take the witness stand in his own behalf, said to the jury: 'What do you think of the defendant not taking the stand, he is admitting he committed this crime.' That immediately thereupon defendant's counsel objected and excepted to such statement as misconduct of counsel, as prejudicial, as a misstatement of the law and of fact, and as improper argument. That immediately thereupon the court overruled such exception and stated: 'Defendant's counsel admitted that he (Wolfe) made all these entries,' and in other words that all the exhibits that the state offered evidence of to show were in his handwriting. That defendant's counsel immediately thereupon excepted to such statement by the court; and further excepted to such statement by the States Attorney for the reason that defendant's guilt is one of the issues in this action which arose by defendant's plea of not guilty, that such statement by the special prosecutor was contrary to the instructions of the court, and a matter upon which the court has instructed the jury that they shall find, and misconduct of counsel, as improper argument. That thereupon the court overruled the latter exception and advised counsel to proceed with the argument."

In fairness to the trial court it should be stated that there is a stipulation in the record to the effect that the appellant conceded that the exhibits offered in evidence by the state were in appellant's handwriting.

■ There is some confusion in the record and some discrep-

ancy ·between the court reporter's notes and the affidavits ·of appellant's counsel, from which the above is quote·d, and which are properly in t·he record ·before us. We think the questions involved are properly presente·d· by affidavits, and since the statements. contained in the affi·davits of appellant's ·counsel are not denied· by any rebuttal affidavit, such statements must be treated as true. Section 2556, R. C. 1919; Morris v. ·Hu·bbard (1901) 14 S. D·. 525, 86 N. W. 25; Heenan v. South D·akota Provision ·C·o. (1917) 38 S. D. 292, 161 N. W. 191; Warwick v. Bliss (1922) 45 S. D. 388, 187 N. W. 715; State v. Ferguson (1925) 48 S. D. 346, 204 N. W. 652.

The alleged improper ·conduct and statements of the trial court and the state's counsel are ·presented ·by proper assignments of error. W·hile the objections ma·de and the exceptions taken to the remarks of the court an·d· the prosecutors might have ·been more ·comprehensive, we ·believe the record is suffi·cient to raise the constitutional question with whic·h· we are now confronted.

Section 4879 of the Revised 19·19 Code of South Dakota, before its amendment in 1927, read as follows: "In the trial of all indi·ctments, informations, ·complaints, and ·other proceedings against persons charged with the commission of any crime, before any court or ·committing magistrate, the person charge·d· shall, at his own request but not otherwise, ·be a competent witness, and his failure ·to make such request shall not create any presumption against him."

By chapter 93 ·of t·he 1927 S·ession L·aws of South Dakota the a·bove quoted section of our Code was amended to read as follows: "In the trial o·f all indi·ctments, informations, complaints, an·d· other proceed·ings against persons charged with the commission of any crime, before any Court or committing magistrate, the person ·charged shall, at his own request, ·but not otherwise, be a competent witness, and his failure to testify in his own ·behalf, is hereby declare·d· to ·be a proper subject o·f comment ·by the prosecuting attorney; provided, h·owever, that if suc·h· comment is made ·by the prosecuting attorney in his closing argument, without any previous reference thereto· having ·been made in argument either on ·behalf of the state or the ·defendant, the attorney for the defendant may thereafter, if he so· request the court, argue upon such comment for. such time as the court shall fix."

By section 9 of article 6 of the Constitution of this state, it is provided: "No person shall be compelled in any criminal case to give evidence against himself."

The section of our Constitution above referred to was the subject of a most able and exhaustive discussion by one of the judges of this court in the case of State v. Smith (1929) 56 S. D. 238, 228 N. W. 240, and also in the more recent case of State ex rel Poach v. Sly (1934) 63 S. D. 162, 257 N. W. 113, 116. While a different state of facts was before the court in each of the above cases, yet we believe the principles of law therein set forth apply with equal force to the case we are now considering. We reaffirm and reiterate all that was said concerning the constitutional rights of an accused in both the Smith and Sly Cases. Apt is the language of Mr. Justice Cardozo, Matter of Doyle (1931) 257 N. Y. 244, 177 N. E. 489, 491, 87 A. L. R. 418, when he said, referring to an identical provision of the New York Constitution:

"The privilege may not be violated because in a particular case its restraints are inconvenient or because the supposed malefactor may be a subject of public execration or because the disclosure of his wrongdoing will promote the public weal.

"It is a barrier interposed between the individual and the power of the government, a barrier interposed by the sovereign people of the state; and neither legislators nor judges are free to overleap it."

Prior to the amendment of 1927, above referred to, this court almost uniformly held that it was reversible error for the prosecutor to comment, in his argument before the jury, upon the fact that the accused did not take the witness stand in his own behalf. See State v. Garrington (1898) 11 S. D. 178, 76 N. W. 326; State v. Bennett (1907) 21 S. D. 396, 113 N. W. 78; State v. Jones (1907) 21 S. D. 469, 113 N. W. 716; State v. Carlisle (1911) 28 S. D. 169, 132 N. W. 686, Ann. Cas. 1914B, 395; State v. Knapp (1914) 33 S. D. 177, 144 N. W. 921; State v. Sonneschein (1916) 37 S. D. 585, 159 N. W. 101; State v. Vroman (1922) 45 S. D. 465, 188 N. W. 746, 749; State v. Wimpsett (1922) 46 S. D. 6, 189 N. W. 983; State v. Lindic (1927) 51 S. D. 516, 215 N. W. 495.

In the case of State v. Vroman, supra, this court had under

consideration alleged improper comments on the part of the prosecutor relating to exemption on the part of the accused claimed when he was upon the witness stand. Judge Smith, speaking for the court, said: "We are of the view that the right to claim exemption on the witness stand is as fully protected by the statute, which is merely a legislative interpretation of section 9, art. 6, of the Constitution, as is his failure to testify at all, and that the state is equally precluded from commenting on the fact of such claim being made as it is from commenting on the fact that the accused has failed to testify at all. We think no presumption arises or can be properly urged against the accused in either case without an invasion of his constitutional rights."

In view of the language above quoted from the Vroman Case, it is quite clear that this court is committed to the rule that it is a violation of constitutional rights to permit comment on the failure of the accused to testify. If such is the law, it is equally clear that such constitutional rights cannot be abrogated, abridged, or curtailed by the mere passage of a statute by the legislative branch of our state government.

The courts of other jurisdictions have adopted the same rule promulgated by this court in State v. Vroman, supra. See People v. Tyler (1869) 36 Cal. 522; Petite v. People (1886) 8 Colo. 518, 9 P. 622; Commonwealth v. Harlow (1872) 110 Mass. 411; Commonwealth v. Scott (1877) 123 Mass. 239, 25 Am. Rep. 87; Ruloff v. People (1871) 45 N. Y. 213; State v. Howard (1892) 35 S. C. 197, 14 S. E. 481; Staples v. State (1890) 89 Tenn. 231, 14 S. W. 603; State v. Cameron (1868) 40 Vt. 555; Price v. Commonwealth (1883) 77 Va. 393; Anderson v. State (1921) 27 Wyo. 345, 196 P. 1047; State v. Pavelich (1928) 150 Wash. 411, 273 P. 182, affirmed on rehearing (1929) 153 Wash. 701, 279 P. 1107, followed and approved Id. (1929) 153 Wash. 379, 279 P. 1102.

The only case to the contrary that we have been able to find is State v. Cleaves, 59 Me. 298, 8 Am. Rep. 422, decided in 1871. Our investigations have failed to reveal that this case has ever been followed by any other court. The reasoning adopted in this case does not appeal to us; it is not in accord with the more modern authorities.

So far as we have been able to discover, South Dakota is the

only state having a constitutional provision against self-incrimination that has undertaken, solely by legislative act, to authorize comment on the defendant's failure to testify. A similar legislative attempt in Louisiana failed of passage. The successful attempt to change the rule in Ohio and the unsuccessful attempts to change it in New York and Michigan were all three by constitutional amendment. See 31 Mich. Law Rev. 40 (1932).

· The United States and forty-six of the forty-eight states have provisions in their Constitutions against self-incrimination, New Jersey and Iowa having no such constitutional provisions. See article by Mr. Reeder, 31 Mich. Law Rev. 40. It is indeed a singular fact that South Dakota alone has by legislative enactment attempted to authorize comment on the accused's failure to testify in the teeth of its constitutional provision against self-incrimination.

We are of the view that the Legislature was without authority, by legislative enactment, to permit comment on the defendant's failure to testify in a criminal case; and that so much of chapter 93 of the Laws of 1927 as purports to permit such comment is not binding upon the judiciary of the state.

It may be that the right to comment upon the failure of the accused to exercise his right to become a witness in his own behalf should be conferred upon prosecutors as a matter of public policy; but if prosecutors are to have such right it must be conferred upon them by constitutional amendment. As stated by this court in State ex rel. Poach v. Sly, supra: "But if such a change in the organic structure and underlying theory of our system of criminal law is to be made, it must be made by the people by constitutional amendment, and, until the Constitutions are changed, it cannot and must not be made by legislative enactment or judicial interpretation."

This court is committed to the rule that constitutional rights may be indirectly invaded as effectively as if directly transgressed. State ex rel Poach v. Sly, supra.

■ If we place our stamp of approval upon the procedure adopted in this case, we are writing law that will compel every defendant in a criminal case to take the witness stand and testify and thereby subject his whole life's record to the most relentless cross-examination, or face the alternative of having the prosecutor, in the most violent manner, parade before the jury the claimed

fact that the defendant is guilty because he chose to stand upon his constitutional rights; and especially is this most prejudicial where, as in this case, by inference at least, the trial court placed his stamp of approval upon the statements of the prosecutor. The practical situation established by the record before us is substantially this: The appellant availed himself of his constitutional right not to testify. The state's attorney said he did not testify because he was guilty and knew it. The special prosecutor told the jury that by not testifying the appellant admitted his guilt. The trial court backed up the special prosecutor by stating, in the presence of the jury, that the false records were admittedly in the handwriting of the appellant.

The appellant's constitutional rights were invaded, for which a new trial must be granted.

█ Appellant has assigned as grounds for a new trial insufficiency of the evidence to support the verdict and the judgment based thereon. We have carefully examined the evidence and are satisfied that there is sufficient legal and competent evidence in the record, if believed by the jury, to support the verdict. It is not our province to substitute our judgment for the verdict of the jury if the evidence is sufficient, as a matter of law, to justify the verdict. State v. Egland (1909) 23 S. D. 323, 121 N. W. 798, 139 Am. St. Rep. 1066; State v. Lamb (1917) 39 S. D. 307, 164 N. W. 69; State v. Hochgraber (1926) 49 S. D. 463, 207 N. W. 470; State v. Perkinson (1926) 50 S. D. 479, 210 N. W. 732.

█ Appellant claims newly discovered evidence in support of his motion for a new trial. Such claimed newly discovered evidence is impeachment in its character. No diligence is shown. It was not an abuse of judicial discretion to deny the motion upon such grounds. State v. Gregory (1913) 31 S. D. 425, 141 N. W. 365; State v. Weston et al (1924) 47 S. D. 328, 198 N. W. 826; State v. Wolfe (1933) 61 S. D. 195, 247 N. W. 407.

Other errors are assigned, all of which have been carefully considered, but are not deemed of sufficient importance to warrant further extending this opinion. We are satisfied the trial court's rulings were correct, or if not, no prejudice resulted.

The judgment and order denying a new trial are reversed and a new trial granted.

BAKEWELL and BECK, Circuit Judges, sitting for POL-LEY, P. J., and ROBERTS, J., disqualified.

CAMPBELL and WARREN, JJ., concur.

RUDOLPH, J., and Bakewell, Circuit Judge, dissent.

RUDOLPH, J. (dissenting). The question presented is the constitutionality of chapter 93, Laws of 1927, which is as follows: "Section 4879. Defendant May be Competent Witness. In the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of any crime, before any Court or committing magistrate, the person charged shall, at his own request, but not otherwise, be a competent witness, and his failure to testify in his own behalf, is hereby declared to be a proper subject of comment by the prosecuting attorney; provided, however, that if such comment is made by the prosecuting attorney in his closing argument, without any previous reference thereto having been made in argument either on behalf of the state or the defendant, the attorney for the defendant may thereafter, if he so request the court, argue upon such comment for such time as the court shall fix." The statute does not contravene the due process clause of the Fourteenth Amendment to the Constitution of the United States. Twining v. New Jersey, 211 U. S. 78, 29 S. Ct. 14, 53 L. Ed. 97. The constitutional provision which it is alleged the above statute contravenes is section 9 of article 6, Constitution of South Dakota, which provides: "No person shall be compelled in any criminal case to give evidence against himself."

The basis of the majority opinion, as I understand it, is that the statute is unconstitutional because it indirectly compels the defendant to go upon the witness stand and testify. I cannot concur in this view. In the first place, it is my opinion that the constitutional provision was aimed only against a direct compulsion, and does not go to the extent of prohibiting comment. Certainly the prohibition against comment is not expressly written into the Constitution, and the only way in which it can be placed there is by interpretation. The statement of the late Judge Andrew A. Bruce in 31 Mich L. Rev. at page 233, seems to me to be sound and in accord with the historical background which fathered the original enactment of the constitutional provision involved: "All that was in the minds of the framers of the constitutional provi-

sions was the desire to prevent injustice and direct compulsion. Theirs was a protest against and a fear of the inquisition of torture which was even then so prevalent on the continent of Europe and which, though denied, had so often accompanied the proceedings of the Star Chamber. They, too, no doubt had in their minds the excesses which had been committed under the Statutes of Philip and Mary when suspects, who were without the aid of counsel, were 'third-degreed' by the examining magistrates. Their protest was against compulsion and not against the reasonable inferences which might be drawn from voluntary acts or from the use of one's volition in refraining from acting."

In the second place I am not impressed with the argument that permitting the state's attorney to comment on the failure of the defendant to testify indirectly compels the defendant to give evidence against himself. Whether the state's attorney is permitted to comment upon failure of the defendant to take the stand or not, this failure to do so is an obvious occurrence at the trial, and in my judgment stands out in the minds of the jury whether commented upon or not as an outstanding feature in any criminal case. In other words, once you declare the defendant is a competent witness in his own behalf, and the defendant then fails to avail himself of the privilege, then and there the effect of his failure to act becomes complete, and nothing the prosecuting attorney can say will either add to or detract very much from the impression the jury already has of the defendant's failure to take the stand in his own behalf. As the Supreme Court of New Jersey said, the inference which follows a failure to testify "is natural and irresistible. It will be drawn by honest jurymen, and no instructions will prevent it." Parker v. State, 61 N. J. Law, 308, 39 A. 651, 654. Similar statements may be found in other reported cases. No authority denies that in every case in which a defendant refuses to take the stand, the fact is noticed by the jury, and the jury draws the natural inferences therefrom. A statement alleged to have been made by the present Chief Justice of the United States Supreme Court is apt.

"It is clear that reversals because a prosecuting attorney has directed the attention of the jury to a circumstance which no intelligent person can help taking into consideration of his own ac-

cord, should have no place in any well ordered system of criminal procedure." From Remarks of Judge Wheeler, Proceedings of the American Law Institute, vol. 9, p. 215. I think the instant case offers a splendid example of the importance of the remarks attributed to Judge Hughes. This defendant has been twice tried and twice convicted. Now we propose to set aside this second conviction because of the fact that the state's attorney has referred "to a circumstance which no intelligent person can help taking into consideration of his own accord."

It seems to me the argument that permitting comment is an indirect method of requiring the defendant to give evidence against himself is founded more in imagination than it is in reason. We know the practical side of trying a law suit, and we know that a prosecutor, even if prohibited by statute, can by innuendo or otherwise refer to the fact that the defendant has failed to become a witness in his own behalf. We not only know that the prosecutor can thus refer to this fact, but we know from actual experience that he does, and that it is done in such a way that no error can be predicated upon it. See State v. Knapp, 33 S. D. 177, 144 N. W. 921. So far as compulsion is concerned, therefore, it is my opinion that, were I advising a defendant in a criminal case, and the question arose as to whether or not he should take the stand in his own behalf, the 1927 statute would have little or no effect in aiding me in determining this question on behalf of my client.

In the third place, I believe the reasoning of the Maine court, which is found in the case of State v. Cleaves, 59 Me. 298, 8 Am. Rep. 422, is sound, and from which I quote:

"The statute authorizing the defendant in criminal proceedings, at his own request, to testify, was passed for the benefit of the innocent and for the protecion of innocence.

"The defendant, in criminal cases, is either innocent or guilty. If innocent, he has every inducement to state the facts, which would exonerate him. The truth would be his protection. There can be no reason why he should withhold it, and every reason for its utterance.

"Being guilty, if a witness, a statement of the truth would lead to his conviction and justice would ensue. Being guilty, and

denying his guilt as a witness, an additional crime would be committed and the peril of a conviction for a new offense incurred.

"But the defendant, having the opportunity to contradict or explain the inculpative facts proved against him, may decline to avail himself of the opportunity thus afforded him by the law. His declining to avail himself of the privilege of testifying is an existent and obvious fact. It is a fact patent in the case. The jury cannot avoid perceiving it. Why should they not regard it as a fact of more or less weight in determining the guilt or innocence of the accused? All the analogies of the law are in favor of their regarding this as an evidentiary fact. All the acts of a party accused, whatever explains or throws light upon those acts, all the acts of others, relative to the crime charged, that come to his knowledge and which may influence him; his loves and his hates, his promises, his threats, the truth of his discourses, the falsehood of his apologies, pretenses, and explanations; his looks, his speech, his silence when called upon to speak; everything which tends to establish the connection between the accused and the crime with which he is charged; every circumstance preceding, accompanying, or following may become articles of circumstantial evidence of no slight importance. A statement is made either to a man or within his hearing, that he was concerned in the commission of a given crime, to which he returns no reply; the natural inference is, that the imputation is well founded or he would have repelled it,— 'silence is tantamount to confession.' Best on Presumptions, § 241. Extrajudicial non-response, when a charge is made, is always regarded as an article of circumstantial evidence, the probative effect of which may be weakened by various infirmative considerations, which it is not now necessary to discuss, but which are to be considered and weighed by the jury.

"When the prisoner is on trial, and the evidence offered by the government tends to establish his guilt, and he declines to contradict or explain the inculpatory facts which have been proved against him, is not that a fact ominous of criminality? Is his silence of any the less probative force when thus in court called upon to contradict or explain, by the pressure of the criminative facts, fully proved, than his extrajudicial, silence when a charge is made to him or in his presence? The silence of the accused,—

the omission to explain or contradict, when the evidence tends to establish guilt is a fact,— the probative effect of which may vary according to the varying conditions of the different trials in which it may occur,—the jury must perceive, and which perceiving they can no more disregard than one can the light of the sun, when shining with full blaze on the open eye.

"It has been urged that this view of law places the prisoner in an embarrassed condition. Not so. The embarrassment of the prisoner, if embarrassed, is the result of his own previous misconduct, not of the law. If innocent, he will regard the privilege of testifying as a boon justly conceded. If guilty, it is optional with the accused to testify or not, and he cannot complain of the election he may make. If he does not avail himself of the privilege of contradiction or explanation, it is his fault, if by his own misconduct or crime he has placed himself in such a situation that he prefers any inferences which may be drawn from his refusal to testify, to those which must be drawn from his testimony, if truly delivered."

The cases cited in the majority opinion do, without question, contain expressions which support the view therein expressed. Many of these cases, however, were decided under statutes, and the reference to the Constitution was wholly unnecessary. The comment of Mr. Reeder regarding these cases in 31 Mich. L. Rev. page 41, is as follows: "But the courts have seldom had occasion to consider whether the usual provisions (referring to constitutional provisions) by themselves forbid comment upon failure to testify. This is because the accused was nowhere a competent witness before the eighteen-sixties, and the legislation which made him competent nearly always provided that his failure to testify should not create any presumption against him. In view of such statutes it has seldom been necessary for the courts to determine how far the constitutions protect the accused."

The case of Petite v. People, 8 Colo. 518, 9 P. 622, 623, illustrates the point. In that case the statute involved was similar to our statute prior to the enactment of 1927. The state's attorney had referred to the fact that the defendant did not take the witness stand in his own behalf. The court, upon objection by opposing counsel, compelled the state's attorney to discontinue this line of

argument and instructed the jury "that the failure of the defendant to testify in his own behalf could not be used to his prejudice and should not be regarded by them." The appellate court held that this instruction cured any error. In the course of the opinion, however, the court said that allowing comment by the prosecuting attorney constituted a violation of the constitutional provision against self-incrimination. This statement, of course, was unnecessary because of the statute, and to me it does not seem to be in accord with the holding of the court. If comment constituted an invasion of the constitutional rights of the defendant, it is difficult for me to see how the invasion of this right could be cured by any instruction of the court. I have always thought the rule to be, that once a constitutional right is violated, that in and of itself is reversible error, and that prejudice or lack thereof is immaterial. State v. Johnson, 50 S. D. 388, 210 N. W. 350; State v. Pickus 63 S. D. 209, 257 N. W. 284. The same criticism could be made of the case of Ruloff v. People, 45 N. Y. 213, which, apparently, is an outstanding case cited in support of the constitutional inhibition against comment.

The South Dakota cases, especially the case of State v. Vroman, 45 S. D. 465, 188 N. W. 746, may quite accurately be classified among the cases which have expressed views to the effect that the Constitution, itself prevented comment when such expression was unnecessary because of a statutory provision. The statute in South Dakota prior to 1927, as construed by this court, prevented comment by the state's attorney, and any reference to the Constitution was unnecessary.

For the reasons above stated, I respectfully dissent from the result reached in the majority opinion.

BAKEWELL, Circuit Judge (dissenting). Judge RUDOLPH in his dissenting opinion, analyzes the case of Petite v. People, 8 Colo. 518, 9 P. 622, and observes that if comment is an invasion of defendant's constitutional rights, no instruction of the court could cure it. This, I think, is an established principle of law. He says that this criticism can also be made of the case of Ruloff v. People, 45 N. Y. 213, and in this I also agree. I think, however, that the Ruloff Case requires further discussion. This case was decided in 1871, only two years after the New York Legislature had passed a

statute identical with our statute as it existed prior to 1927, and only seven years following the Maine Act of 1864 (Laws 1864, c. 280) which was the first legislative act conferring competency on persons on trial for crime, so it is probably largely responsible for the holdings of the several courts whose decisions are cited in the majority opinion as authority for the view that comment on defendant's failure to testify, is violative of the Constitution. The situation in this case was that the trial judge had, in his charge to the jury, alluded at least twice to the fact that the defendant was not sworn; but, upon his attention being called to the statute, told the jury that there was no law requiring the prisoner to be sworn and that no inference was to be drawn against him from the fact of his not being sworn. The Court of Appeals, as in the case of Petite v. People, supra, held the error to be cured by the subsequent explanation, which, as Judge RUDOLPH remarks, is not consistent with the idea that defendant's constitutional rights had been invaded. Certainly, if defendant had been deprived of a constitutional right no explanation could have remedied the error.

But let us further examine this pioneer authority for the unconstitutionality of comment. The decision proceeds to recite the manifold disadvantages resulting to the accused should he take the stand in his own defense, the court observing that "The act [Chapter 678 Laws of 1869] may be regarded as of doubtful propriety, and many regard it as unwise, and as subjecting a person on trial to a severe if not cruel test." And that "If, with this statute in force, the fact that he is not sworn can be used against him, * * * then the individual is morally coerced, although not actually compelled to be a witness against himself. The constitution, which protects a party accused of crime from being a witness against himself, will be practically abrogated."

The Ruloff Case is an eloquent diatribe against the beneficence of the legislative grant of testimonial capacity to persons on trial for crime and one is easily persuaded that the members of that court did not approve of the legislative act which rendered the defendant a competent witness, but it certainly cannot be construed as authority for the unconstitutionality of comment on the failure of the accused to testify. On the contrary, this decision specifically holds that the defendant is not actually compelled to be a witness against himself, and, apparently not persuaded that moral coercion

can amount to actual compulsion, the court carefully tempers its phraseology by saying that the Constitution would be practically abrogated.

To just what extent this decision has influenced the trend of the decisions cited in the majority opinion is, of course, impossible of ascertainment, except that it has been frequently cited as holding comment to be an invasion of a constitutional right.

The constitutional guaranty is that no person shall be compelled in any criminal case to give evidence against himself; not that he shall not be morally coerced. There is certainly a vast difference between the two as is clearly recognized in the Ruloff Case. If it is moral coercion for a prosecutor to comment on the obvious fact that the accused has not testified, it is certainly the very extreme of moral coercion to confront him with his accusers and tempt him to deny their accusations. All the mechanics of a criminal trial are a form of moral coercion tending to force testimony from the unwilling lips of the defendant. The considerations which may impel or morally coerce a person on trial to testify depend on a multitude of different circumstances, some of which, as for example, the desire to protect other persons involved, or perhaps the promptings of conscience might be classed as moral coercion. After all, we must not overlook the fact that a criminal trial is a proceeding to determine the guilt or innocence of the defendant. If the jury observes his failure to testify as to facts within his apparent knowledge, it is likely to make the same deductions that it would if he failed to deny a charge made against him and in his presence out of court, since it knows of his right to testify if he chooses so to do.

The moral coercion of the defendant, which may impel him to take the witness chair, is the consciousness that the jurors will observe his failure to do so, and, by applying their own human experience and observation, treat it as an evidence of guilt. To assume that the jury will not notice that this central figure in the trial has failed to testify, but will remain in blissful ignorance of the fact until reminded of it by the prosecutor, is an assumption fully as unsound as that of the Legislature in providing by statute that "His (the defendant's) failure to make such request (to testify) shall not create any presumption against him," which is an

amazing example of legislative confidence in its power to control human reactions.

Neither legislative command nor judicial doctrine will close the eyes of jurors to the failure of defendant to deny from the witness chair the inculpatory facts adduced from the state's witnesses; nor can the jury fail to draw an inference therefrom unfavorable to defendant. This, the defendant well knows, and, doubting the omnipotence of the Legislature to direct the natural conclusions of men with a statute creating a negation of presumption, he is morally coerced to take the witness chair. The comment of the prosecutor does not create a situation which did not already exist and was not already evident to every juror. Hence the unreasonableness of the theory that the fear of the prosecutor's comment on the obvious fact that defendant has not testified at the trial coerces the defendant into testifying.

The majority opinion states "That this court is committed to the rule that it is a violation of constitutional rights to permit comment on the failure of the accused to testify," and cites in support thereof the cases of State v. Vroman, 45 S. D. 465, 188 N. W. 746; State v. Smith, 56 S. D. 238, 228 N. W. 240, 247; State ex rel. Poach v. Sly 63 S. D. 162, 257 N. W. 113.

The Sly Case is one in which this court was considering the question of whether a person who testified in a John Doe investigation could move to quash an information later filed charging him with a crime. In the opinion, written by Judge Campbell, there is a general discussion of constitutional guaranties against self-incrimination, in which the court, after referring to the system of criminal procedure in force in continental Europe, "Where, as in France, the person suspected or accused of crime can be and is subjected, regardless of his wishes, to the most thorough, searching, and severe judicial examination," closes the subject by using the phrase alluded to in the majority opinion, viz.: "But if such a change in the organic structure and underlying theory of our system of criminal law is to be made, it must be made by the people by constitutional amendment, and, until the Constitutions are changed, it cannot and must not be made by legislative enactment or judicial interpretation." I am in full agreement that to change our criminal trial system to the continental European system would

be beyond the power of either the Legislature or the courts, but I am unable to see that any law laid down in State ex rel. Poach v. Sly has any bearing on the question of the constitutionality of comment by the prosecutor on the failure of defendant to testify.

The only contribution which this decision makes to the subject here in controversy is a statement that section 9, article 6 of the South Dakota Constitution is "emphasized" by section 4879, R. C. 1919, but as no amount of emphasis by a Legislature can have much effect on a constitutional provision, I think we can say that this case has not very far committed this court to the rule stated in the majority opinion.

The case of State v. Smith, supra, was another case where the accused had been taken before a magistrate in a John Doe investigation and had testified; was later arrested and convicted, and on appeal claimed that his constitutional rights had been invaded in the investigation. There was no claim of comment by the prosecutor. The opinion, after a general discussion of the constitutional guaranties, refers to section 4879, R. C. 1919 and says: "This amounts to nothing more nor less than a statutory interpretation and reiteration of the constitutional immunity."

The only one of the three decisions of this court cited in the majority opinion which deals with comment on failure to testify is the case of State v. Vroman, supra, in which the court considers the comment of the prosecutor in reference to the refusal of an accused on trial for perjury and who had testified in his own behalf, to make some specimen signatures. Here the court held the comment to be an invasion of defendant's statutory rights, which, in view of the provisions of section 4879, R. C. 1919, then in force, was clearly a correct conclusion. The court, however, again makes the usual, and, I think, not only entirely gratuitous, but wholly incorrect observation, that section 4879, supra, is merely a legislative interpretation of section 9, article 6 of the Constitution.

I have here attempted to analyze these three opinions of this court, not because I believe they have any bearing on the question now before us, but because they have been accorded such importance by the majority of this court, as committing us to the rule, that it is a violation of defendant's constitutional rights to permit comment on his failure to testify.

All three of these cases were decided while section 4879, negating presumption from failure to testify, was in force, so that, independently of the Constitution, no comment would be proper. Stripped down to their essentials, all these decisions hold as regards the Constitution is that section 9 of article 6 is emphasized by the statute (State ex rel. Poach v. Sly, supra) and that the Legislature by the passage of section 4879 has placed a legislative interpretation on the constitutional provision (State v. Smith, supra; State v. Vroman, supra).

The position then to which this court is committed is not that comment is an invasion of the constitutional right, but only that we are bound by an interpretation placed on the Constitution by the state Legislature to the effect that the constitutional provision is synonymous with section 4879.

The Legislature has not undertaken to interpret the Constitution, and, if it has, has neither the authority nor the capacity to do so. Chapter 16, Laws of 1879, Territory of Dakota, which is the parent statute of section 4879, R. C. 1919, is an exact copy of statutes existing in older states at the time of its passage. The original common-law incompetency of the defendant had in point of time been first removed by the Maine Legislature in 1864 by a statute providing, in substance, that the defendant might, at his own request, but not otherwise, be a competent witness. The Maine act did not have the provision relating to presumption. This privilege seems to have been generally considered as being a boon of doubtful value to the defendant, so when, in 1869, the New York Legislature was considering the passage of a statute conferring competency on the defendant, they added the clause "and his failure to make such request shall not create any presumption against him," thereby evoking the approval of the Court of Appeals of that state and prompting it to say in the case of Ruloff v. People, supra: "The Legislature forsaw some of the evils and dangers that might result from the passage of this act, and did what could be done to prevent them by enacting that the neglect or refusal of the accused to testify should not create a presumption against him." And although the Ruloff Case was decided only two years subsequent to the passage of the statute, the Court of Appeals seemed to view the act of the New York Legislature as a piece of constructive

legislation rather than as a legislative interpretation of the Constitution.

The matter of the proper construction and interpretation of our Constitution is for this court, not for the Legislature. Section 4879 was repealed by chapter 93, Laws of 1927 in so far as the presumption from failure to testify is concerned, so even if the Legislature did interpret the Constitution back in 1879, it has now seen fit to forswear such interpretation in favor of a new one. We may not, therefore, longer evade the necessity of substituting judicial for legislative interpretation. I fully concur in the dissenting opinion of Judge RUDOLPH, and respectfully dissent from the result reached in the majority opinion.