STATE, Respondent, v. VROMAN, Appellant.

(188 N. W. 746.)

(File No. 5034.  Opinion filed June 13, 1922.)

1.  **Criminal Law—Self-incriminating Testimony, Constitutional Provision, Liberal Construction—Rule.**

As a firmly established common law principle, constitutional provisions protecting persons against being compelled to give evidence against themselves, must have broad construction favoring the right it was intended to secure, and illegitimate and unconstitutional practices, which find footing through silent approaches and slight deviations from legal porcedure can be obviated only by adhering to such rule of liberal construction.

2.  **Same—Personal Identity, Right to Require Exhibit of Himself, Inharmonious Decisions Re—Illustrative Cases.**

The decisions as to what acts constitute invasion of right not to be compelled to give self-incriminating testimony, are inharmonious; such questions for instance, as to the right to require a defendant, taking the stand in his own behalf, and against objection, to try on a shoe to determine whether tracks

30—Vol. 45, S. D.

found at scene of crime are his; also the question of refusal of accused to make tracks for purpose of comparison.

3. **Same — Defendant Voluntarily Testifying, General Rule Re Waiver of Constitutional Privilege—Uttering Forged Check, Rule of Evidence Re Stated.**

However, when accused voluntarily takes the witness stand in his own behalf, he waives the immunity, i. e. the constitutional privilege of not answering proper questions, and may be required to answer any questions which would be proper on cross-examination of any other witness; also concerning matters affecting his credibility, subject to the limitation that he cannot be required to state facts constituting an independent crime, the waiver of immunity extending only to the particular crime for which he is on trial. Therefore, held, that accused having denied writing signature upon an incriminating document properly in evidence may be cross-examined by exhibiting to him the same signature upon another document and inquiring whether it is his handwriting, and upon an affirmative answer, such signature may be received in evidence for comparison with the disputed signature, there being no substantial distinction between such procedure and one requiring witness to produce a signature in open court, for comparison; and the time and circumstance under which the two signatures were made are immaterial as to right of cross-examination; and, having waived the immunity, defendant may not shield himself from proper cross-examination by asserting the very privilege he has waived; and this Court is inclined to the view that trial court's ruling in requiring defendant on trial for uttering and publishing a forged check with intent to defraud (Sec. 4303, R. C. 1919), and who has taken the witness stand in his own behalf, did not err in requiring him, after having testified that neither the check in evidence nor the endorsement thereon was in his handwriting, to write certain figures and names, being the same as those appearing on the alleged forged check, and in allowing in evidence said figures and names, over defendant's objection.

4. **Criminal Law—Trials—Misconduct of Counsel, Commenting Upon Defendant's Claim of Constitutional Exemption from Answering Incriminating Questions—Right to Claim Exemption, Statutory Protection of.**

Under Const., Art. 6, Sec. 9, providing that no person shall be compelled in any criminal case to give evidence against himself, and Sec. 4879, R. C. 1919, providing that in criminal trials, etc., the person charged shall, at his own request but not otherwise, be a competent witness and his failure to make such request shall not create any presumption against him; held, that defendant's right to claim exemption on the witness

stand, is as fully protected by said statute (which is a legislative interpretation of the constitutional provision) as is his failure to testify at all; the State being equally precluded from commenting on the fact of such claim being made, as it is from commenting on the fact that accused has failed to testify at all; and no adverse presumption can be urged against accused in either case without invasion of his constitutional rights.

5. Same—State's Counsel Commenting on Counsel's Objections to Assertion of Guilt from Making Exemption Claim, That "Counsel Knew His Client was Guilty and Objected for That Reason," and That "Inference of Guilt was Unanswerable"—Prejudicial Ruling.

Where, after defendant on trial for uttering a forged check with intent to defraud had taken the witness stand in his own behalf, and having testified that neither the check nor the endorsement was in his handwriting, whereupon on cross-examination State's attorney requested defendant to write some names which he gave him, which defendant was by court directed to write as requested over objections, and did write certain names and figures, which latter were received in evidence over defendant's objections; and state's attorney in argument to jury stated "if there were no other evidence but the objections made by C (defendant's counsel) to witness's furnishing the state with a specimen of his handwriting, that should be sufficient evidence of his guilt, and when C made the objection he knew defendant was guilty," and after said statement was objected to, state's attorney further said: "and I reiterate to you, that he must have known it or he wouldn't have objected to the evidence which was introduced and I don't blame Mr. C for objecting to that argument because it is unanswerable;" held, that such statements to jury constituted prejudicial error; nor could the most vigorous admonition of trial court remove its prejudicial effect upon jurors' minds.

Appeal from Circuit Court, Minnehaha County. Hon. LOUIS L. FLEEGER, Judge.

The defendant, R. D. Vroman, was convicted of the crime of uttering and publishing a forged check with intent to defraud, knowing such instrument to be forged, and he appeals. Reversed, and new trial awarded.

*Jones, Muller & Conway,* for Appellant.

*Byron S. Payne,* Attorney General, and *Vernon R. Sickel,* Assistant Attorney General, for Respondent.

(3)    To point three of the opinion, Appellant cited: Gillespie v. State, 115 Pac. 620, 25 Ann. Cases, 259; Cooper v. State (Ala.) 4 L. R. A. 766; Stokes v. State, 5 Baxt. 619; Mississippi Lumber & Fuel Co. v. Kelly (S. D.), 104 N. W. 265.

Respondent cited: 40 Cyc. 2516; Short v. U. S. 221 Fed 248; 16 C. J. 568.

(4)    To point four, Appellant cited: Lindsey v. Pettigrew (S. D.) 52 N. W. 873; Brown v. Swienford, 44 Wis. 282; People v. Fielding, 158 N. Y. 542, 46 L. R. A. 641.

SMITH, J.    Appellant was charged with the crime of uttering and publishing a forged check with intent to defraud, knowing such instrument to be forged, in violation of section 4203, R. C. 1919.    At the trial the state introduced evidence tending to support the allegations of the indictment, and particularly that the check was forged, and not indorsed by the purported payee thereof, and that the defendant delivered said check to one Marguison, and received therefor merchandise and cash to the amount of the purported check.    Defendant, called as a witness in his own behalf, testified that neither the check nor the indorsement was in his handwriting.    On cross-examination the state's attorney said to the defendant:

"I want you to come down here, Mr. Vroman, and write some names which I give you."

This proceeding was objected to by defendant as not proper cross-examination, and as asking defendant to give evidence against himself.    The objection was overruled, and defendant was directed by the court to write, as requested, whereupon defendant was required to write certain figures and names, being the same as those appearing on the alleged forged check.    The paper containing the figures and names thus written was then offered and received in evidence over defendant's objection.    These rulings are assigned as error.    Mr. Conway, as attorney for defendant, was the person who, during the trial, entered the objections above noted.    Thereafter, in his argument to the jury, the state's attorney made the following statement:

"If there were no other evidence but the objection made by Conway to the witness furnishing the state with a specimen of his handwriting that should be sufficient evidence of his guilt, and

when Conway made the objection he knew that the defendant was guilty."

This statement was objected and excepted to by defendant, whereupon the state's attorney continuing, said:

"And I reiterate to you, gentlement of the jury, that he must have known it or he wouldn't have objected to evidence which was introduced, and I don't blame Mr. Conway for objecting to that argument, because it is unanswerable."

Defendant thereupon objected to these statements as prejudicial to a fair trial, and as tending to bias the judgment of the jury, and demanded that the court reprimand the state's attorney, and require him to desist from making similar statements. . The court thereupon said:

"The court at this time, in view of the exception taken by counsel for the defendant, will say to the jury that in trying this case it is your duty as jurors to try it upon the evidence that was offered here in court and the instructions of the court. You no doubt all understand that counsel probably on both sides, when they get a little excited, anyway, say more possibly than they intend to. I feel quite sure that this jury would not be prejudiced by anything that either of the counsel say."

Defendant's counsel excepted to this statement of the court, in that it did not definitely express disapproval of the language of the state's attorney in the presence of the jury. This proceeding is also assigned as error. Appellant contends that the order of the court requiring defendant to furnish a specimen of his handwriting by writing figures and names found on the back of the alleged forged check was in violation of defendant's rights under section 9, art. 6, of the Constitution, in that it compelled him to give evidence against himself.

[1] In 28 R. C. L. 423 (8), it is said:

"No principle of the common law is more firmly established than that which affords to a witness the privilege of refusing to answer any question that will criminate himself. * * * This principle finds expression in the Constitutions of many states. * * * It has frequently been ruled that constitutional provisions protecting persons against being compelled to give evidence against themselves must have a broad construction in favor of the right which it was intended to secure. Illegitimate and unconstitutional prac-

tices get their first footing by silent approaches and slight devia-
tions from legal modes of procedure. This can be obviated only
by adhering to the rule that constitutional provisions for the secur-
ity of person and property should be liberally construed."

[2]    There seems to be a lack of harmony among different
courts as to what acts constitute an invasion of the right to be
compelled to give self-incriminating testimony. Where the issue
is one of the personal identity of the accused it seems to be quite
generally held to be no invasion of his rights to require him to
exhibit himself in any manner in which an ordinary person is
commonly seen in public.

As to the application of this rule, the courts are not in har-
mony. 28 R. C. L. 435 (21, 22, 23). Cases are cited holding
that:

"A defendant taking the stand in his own behalf cannot be
required against objections, to try on a shoe to determine whether
tracks found at the scene of the crime are his; nor can he be
required if he objects, to measure the shoe after putting it on."
—and that:

"The refusal of accused to make tracks for the purpose of
comparison is not admissible in evidence as a fact against him,
nor can he, in the view of some courts, be compelled to make
impressions of his feet for comparative purposes. However, there
is authority directly opposed to this."

In 28 R. C. L. 441 (31), it is said:

"However, when he (the accused) voluntarily takes the wit-
ness stand in his own behalf he thereby subjects himself to the
same rule that governs other witnesses, and waives his constitu-
tional privilege of not answering proper questions that may tend
to convict him of the crime for which he is on trial. Thus, under
this rule it has been held that, where the defendant denies a writ-
ing or signature, he may be called, on cross-examination, to write
in open court in order that the jury may compare his writing with
the writing in controversy."

The limitation of the rule is thus pointed out by Mr. Wig-
more (section 2265):

"The limit of the privilege is a plain one. From the general
principle (ante, § 2263) it results that an inspection of the bodily
features by the tribunal or by witnesses cannot violate the privi-

lege, because it did not call upon the accused as a witness, i. e., upon his testimonial responsibility. That he may in such cases be required sometimes to exercise muscular action, as when he is required to take off his shoes or roll up his sleeve, is immaterial, unless all bodily action were synonymous with testimonial utterance; for, as already observed (ante, § 2263), not compulsion alone is the component idea of the privilege, but testimonial compulsion. What is obtained from the accused by such action is not testimony about his body, but his body itself. Unless some attempt is made to secure a communication, written or oral, upon which reliance is to be placed as invoking his consciousness of the facts and the operations of his mind in expressing it, the demand made upon him is not a testimonial one. Both principle and practical good sense forbid any larger interpretation of the privilege in this application, and healthy judicial opinion has frequently pointed this out with force."

See Ann. Cas. 1912D, 263.

In the note to Gillespie v. State (5 Okl. Cr. R. 546, 115 Pac. 620, 35 L. R. A. [N. S.] 1171) Ann. Cas. 1912D, at page 263, the learned author of the note says:

"It is a well-established rule that when a defendant in a criminal case voluntarily takes the witness stand in his own behalf he thereby subjects himself to the same rules of cross-examination that govern other witnesses, and waives his constitutional privilege of not answering proper questions that may tend to convict him of the crime for which he was on trial [citing numerous authorities]. * * * Under this rule it has been held that where a defendant denies a writing or signature he may be called on in cross-examination to write in open court, in order that the jury may compare such writing with the writing controverted"—citing U. S. v. Mullaney (C. C.) 32 Fed. 370; Bradford v. People, 22 Colo. 157, 43 Pac. 1013; Commonwealth v. Craig, 19 Pa. Super. Ct. 81.

In 28 R. C. L. 434 (20), it is said that:

"The rights intended to be protected by the constitutional provision that no man accused of crime shall be compelled to be a witness against himself, are so sacred, and the pressure toward their relaxation so great when the suspicion of guilt is strong and the evidence obscure, that it is the duty of courts liberally to con-

strue the inhibition in favor of personal rights, and to refuse to permit any steps tending toward their invasion. Hence there is the well-established doctrine that the constitutional inhibition is directed not merely to the giving of oral testimony, but embraces as well the furnishing of evidence by other means than by word of mouth, the divulging, in short, of any facts which the accused has a right to hold secret."

[3] However, when the accused voluntarily takes the witness stand in his own behalf, he waives that immunity, and subjects himself to the same rules that govern other witnesses, and may be required to answer any questions which would be proper on cross-examination of any other witness. He may also be questioned as to matters which affect his credibility, subject, however, to the limitation that he cannot be required to state facts constituting an independent crime, the waiver of his constitutional right extending only to the particular crime for which he is on trial. We think it must be conceded that the accused, who has denied writing a signature upon an incriminating document properly in evidence, may be cross-examined by exhibiting to him the same signature upon another document, and inquiring whether it is his handwriting, and upon an affirmative answer such signature may properly be received in evidence for comparison with the disputed signature. We see no substantial distinction between such a proceeding and one requiring the witness to produce a signature in open court for comparison. The time and circumstances under which the two signatures were made would be immaterial as affecting the right of cross-examination. It would seem to follow that the accused, having waived his constitutional right by testifying in his own behalf, may not shield himself from proper cross-examination by asserting the very privilege he has waived. It is unnecessary in this case to decide and we do not go to the extent of holding, that an accused who is a witness in his own behalf may be cross-examined as to all matters pertaining to the criminal charge, regardless of the usual limitations upon cross-examination. But we are inclined to the view that the ruling of the trial court in this case was not erroneous.

[4] The assignment as to misconduct of counsel presents a question of some difficulty. There are decisions which hold, in effect, that where a defendant takes the witness stand in his own

defense and claims constitutional exemption from answering questions which might incriminate him, such fact may be commented upon by counsel and considered by the jury as an indirect admission of guilt. The Code (section 4879, R. C. 1919), however, declares that the failure of the accused to become a witness on his own behalf in a criminal case "shall not create any presumption against him." The decisions are quite uniform in holding that a witness cannot claim his constitutional exemption from self-crimination by refusing to be sworn as a witness, but must make such claim after he is sworn, and when asked to testify. Under the rule that the fact of a claim of exemption may be commented on as an indirect admission of guilt, and that his right must be asserted after he is sworn as a witness, the accused might well claim that his constitutional rights were being frittered away by "silent approaches and slight deviations from legal modes of procedure." We are of the view that the right to claim exemption on the witness stand is as fully protected by the statute, which is merely a legislative interpretation of section 9, art. 6, of the Constitution, as is his failure to testify at all, and that the state is equally precluded from commenting on the fact of such claim being made as it is from commenting on the fact that the accused has failed to testify at all. We think no presumption arises or can be properly urged against the accused in either case without an invasion of his constitutional rights.

[5] In the case at bar counsel for the state, in a most vigorous and effective way, commented to the jury on the fact that such objections had been made by counsel on behalf of his client, and asserted that such counsel knew his client was guilty, and objected for that reason, and that the inference of guilt was unanswerable, and this after the trial court had overruled the claim of exemption, and compelled the accused to furnish a specimen of his handwriting for comparison with the alleged forged check. Such an argument was indeed "unanswerable" except by a denial of the asserted fact of defendant's admission of guilt to his counsel—a denial that defendant's counsel was not called upon to make. We are of the view that such an argument was, in fact, so "unanswerable" that the most vigorous admonition of the trial court might well have failed to remove its prejudicial effect from the minds of jurors.

We think no discussion or citation of authorities is necessary to sustain our conclusion that the argument of the prosecuting officer was improper and prejudicial, and that a new trial should be awarded the accused.

It will be so ordered.