407 P.2d 59

**STATE of Arizona, Appellee,**

v.

**Eddie Willie TAYLOR, Appellant.**

No. 1464.

Supreme Court of Arizona.

En Banc.

Nov. 4, 1965.

Robt. W. Pickrell, former Atty. Gen., Stirley Newell, Asst. Atty. Gen., Darrell F. Smith, Atty. Gen., Gary Nelson, Asst. Atty. Gen., and Robt. K. Corbin, Maricopa County Atty., for appellee.

Hammond & Redeker, by Alan L. Hammond, Phoenix, for appellant.

UDALL, Justice.

Appellant, Eddie Willie Taylor, hereinafter called defendant, was tried by a jury and found guilty of a charge of armed robbery.

During the trial defendant sought to establish an alibi through the testimony of one Jessie Bates. On direct examination by defense counsel, Bates testified that at various times during the evening the alleged crime was committed, she and R. L. Davis were in the company of defendant and particularly at the time of the alleged crime he was with them. During the course of direct examination, the witness was asked questions concerning her relationship with Davis, the various times and places the witness Bates and Davis were in each other's company, and the witness also testified as to the physical description of Davis.

On cross-examination the prosecutor asked Bates where Davis resided. To this question defense counsel objected on the grounds that it was immaterial. The objection was overruled by the court and Bates answered that Davis resided in the state prison at Florence, Arizona. The prosecutor did not further refer to Davis during the cross-examination.

The defendant took the stand in his own behalf and during the period of cross-examination he was required to try on a hat that had been identified by a witness as the one worn by defendant at the time the crime was alleged to have been committed. Defendant objected to the question on grounds it was "wholly immaterial, irrelevant, and has no probative value whatsoever." The objection was overruled and defendant was

required to place the hat on his head in the presence of the court and jury. Defendant stated, however, that the hat was not his.

Defendant first contends the court erred in overruling the objection of defense counsel in reference to the residence of R. L. Davis, who allegedly was with witness Bates when they were in the company of defendant during the approximate time the crime was committed. It is the claim of defendant that the association of the alibi witness Bates with a person who at the time of trial was in the state penitentiary, was improper inpeachment and was neither relevant nor admissible.

 It is the position of the State that the court did not err in overruling the objection on the grounds it was irrelevant and immaterial. In an early Arizona case this Court stated:

> "An objection that the testimony is irrelevant, without specifying wherein or how or why it is irrelevant, will not be considered in the supreme court as raising any issue, if the testimony could, under any possible circumstances, have been relevant." Rush v. French, 1 Ariz. 99, 25 P. 816. Udall, Ariz. Law of Evidence, § 12, p. 26 (1960).

Since the objection referred only to whether an answer to the question was material the enlargement of the objection to include the ground that it was improper impeachment will not now be entertained on appeal, since the trial court had no opportunity to pass on the question of alleged improper impeachment, and error cannot be assigned on appeal upon grounds that were not urged before the trial court. State v. Evans, 88 Ariz. 364, 356 P.2d 1106; State v. Loftis, 89 Ariz. 403, 363 P.2d 585.

 It would further appear that the residence of R. L. Davis was clearly material to the issues of defendant's alibi. The witness Bates, as an alibi witness for defendant, associated herself with Davis. The state may, of course, impeach the alibi. Thus the question of the whereabouts of Davis was material to the issues, since it would be important to afford the State an opportunity to contact Davis as a prospective witness to determine whether his testimony would corroborate the testimony of Bates.

 When defendant injected an issue into the trial, namely that the witness Bates and her companion Davis were with defendant during the time the alleged crime was committed, the door was opened and the prosecution was at liberty, on cross-examination, to test the accuracy of this testimony relative to the whereabouts of the parties (including Davis) at the time of the alleged crime. In State v. Eisenstein, 72 Ariz. 320, at page 329, 235 P.2d 1011, at page 1017, we said:

> "It is also the usually accepted rule that where counsel has himself injected a certain issue into the case, he

may not object because the other party also introduces evidence of a similar nature."

See also Riley v. State, 50 Ariz. 442, 73 P.2d 96. The cross-examination of Bates, as to the residence of R. L. Davis, over defense counsel's objection of "immaterial", did not constitute error. This first assignment is without merit.

It is next contended the court erred in overruling defendant's objection to the court requiring defendant to try on a hat which was found at the scene of the alleged robbery, during the course of the trial. It is admitted by counsel for the state that defendant could not have been required by the state to take the stand and try on the hat, but it is the state's contention—since the defendant voluntarily took the stand, he waived the privilege against self-incrimination.

Counsel for defendant predicated his objection on grounds the evidence was "wholly immaterial, irrelevant, and had no probative value." The state argues defendant is barred from urging for the first time on appeal a denial of the privilege against self-incrimination. State v. Loftis, supra; State v. Evans, supra. The record discloses, in raising the objection during the trial, defendant made no claim that he was being denied his constitutional right of privilege against self-incrimination. As previously stated, a general objection is the equivalent of no objection at all. Rush v. French, supra. The trial court must have an opportunity to rule on the objection, and we will not consider an assignment of error based upon a ruling on a general objection if the evidence is admissible for any purpose. However, even assuming the proper objection was interposed, our decision in this case would be the same.

Ariz.Const., Art. II, § 10, A.R.S., states, "No person shall be compelled in any criminal case to give evidence against himself, * * *." It is the law in Arizona if the defendant "offers himself as a witness in his own behalf, he may be cross-examined to the same extent and subject to the same rules as any other witness." A.R.S. § 13–163 (1956).

It is contended by the state the privilege against self-incrimination is only directed against testimonial compulsion and it does not apply to physical evidence, such as tracks, Lee v. State, 27 Ariz. 52, 229 P. 939. The same would be true relative to results of defendant being required to submit to fingerprinting. Cf. Garcia v. State, 26 Ariz. 597, 229 P. 103 (1924) ; Moon v. State, 22 Ariz. 418, 198 P. 288, 16 A.L.R. 362 (1921). See McCormick, Evidence, § 126 (1954).

The constitutional privilege against self-incrimination may be insisted upon or it may be waived. An ordinary witness, by taking the stand, does not waive his constitutional privilege of self-incrimination as he is not exempt from an-

swering nonincriminatory questions. However, the defendant, by testifying, waives his constitutional privilege against self-incrimination and must answer all relevant questions even though they may tend to convict him of the crime for which he is on trial. See State v. Garaygordobil, 89 Ariz. 161, 359 P.2d 753 (1961).

The problem presented, in the instant case, is whether the defendant in a criminal case, after voluntarily taking the witness stand and testifying to certain matters on direct examination, may be required to perform physical acts on cross-examination in the presence of the jury to facilitate his identification by a witness, or for other evidentiary purposes; or, does the privilege against self-incrimination still extend to these physical acts though there has been a waiver of the constitutional privilege by voluntarily testifying? This question has never been decided by this Court, and there would seem to be a difference of opinion in decisions from other jurisdictions which have discussed this problem.

Some courts have held a defendant's rights were violated by requiring him to perform physical acts or make exhibitions before the jury, notwithstanding he had voluntarily testified in his own behalf. Allen v. State, 183 Md. 603, 39 A.2d 820, 171 A.L.R. 1138 (1944); Ward v. State, 27 Okl. Cr. 362, 228 P. 498 (1924). These cases conclude, the doctrine of waiver arising from defendant's voluntarily testifying does not apply to particular physical acts or exhibitions as were required of the accused. These courts reason it is demanding too much from the waiver doctrine of the privilege against self-incrimination, to compel an accused in open court to perform physical acts which would directly connect him with the commission of the crime.

The numerical majority and better reasoned cases, however, hold that when a defendant voluntarily becomes a witness, he may be properly required to perform particular acts or make particular exhibitions on the witness stand if relevant to the case.[1] These cases give effect to the doctrine of waiver of the privilege against self-incrimination by stating the defendant loses the privilege by voluntarily becoming a witness and testifying in the case. The Su-

1. Ziegler v. United States, 174 F.2d 439 (9th Cir. 1949); Neely v. United States, 2 F.2d 849 (4th Cir. 1924); Coats v. State, 253 Ala. 290, 45 So.2d 35 (1950); Lumpkin v. State, 19 Ala.App. 272, 97 So. 171 (1923); People v. Ortiz, 66 Cal.App. 154, 225 P. 462 (1924); Fox v. Commonwealth, 299 Ky. 293, 185 S.W.2d 394 (1945); People v. Mead, 50 Mich. 228, 15 N.W. 95 (1883); State v. Oschoa, 49 Nev. 194, 242 P. 582 (1926); State v. Heaven-er, 146 S.C. 138, 143 S.E. 674 (1928); State v. Jones, 188 Wash. 275, 62 P.2d 44 (1936); State v. Nordstrom, 7 Wash. 506, 35 P. 382 (1893), affirmed in 164 U.S. 705, 17 S.Ct. 997, 41 L.Ed. 1183 (1896). See generally Annot., 171 A.L.R. 1144 (1947); 8 Wigmore, Evidence § 2276(2) (McNaughton Rev. 1961); 2 McCormick, Evidence § 131 (1954); 2 Underhill, Criminal Evidence § 360 (1956).

preme Court of California, in People v. Atchley, 53 Cal.2d 160, 346 P.2d 764, 771 (1959), as to this question, stated:

"Defendant was also asked on cross-examination to demonstrate certain aspects of his alleged struggle with his wife. He argues that this demonstration violated his privilege against self-incrimination and that it was not proper cross-examination because not restricted to matters about which he was examined in chief. * * * The entire demonstration, therefore, was within the scope of permissible cross-examination * * *, and defendant waived his privilege against self-incrimination as to the matters involved when he voluntarily raised them on direct examination."

A number of cases have held, where the defendant in a criminal case takes the witness stand in his own behalf and, on direct examination, denies that a writing was made by him, it is proper cross-examination to require him to write the disputed words or figures, and it does not violate his privilege in respect of compulsory self-incrimination.[2]

These cases refuse to recognize a partial waiver of the privilege against self-incrimination, and declare that having waived the constitutional privilege to remain silent by taking the witness stand, the defendant cannot give testimony and demonstrative evidence in his favor, and then object to legitimate cross-examination, upon the grounds of self-incrimination. The Criminal Court of Appeals of Texas, in Long v. State, supra, clearly states the reasoning of the majority view:

"The accused, on the other hand, knows, in advance of becoming a witness, that, if he takes the stand, the state will seek to elicit from him every fact affecting his status as a witness and pertinent to his guilt in the particular case on trial. Prior to becoming a witness he is wholly immune from inquiry. The Constitution protects him. When he elects to waive its shelter he thereby abandons his right to refuse as a witness. He may not thereafter give answer only to such questions as those whose reply would favor himself, but must yield to all pertinent inquiry. His voluntary offer of personal testimony, deemed by him competent and material to the issues, amounts to a waiver on his part as to any relevant fact, because each rele-

2. See, e. g., United States v. Mullaney, C.C., 32 F. 370 (1887); Mann v. State, 33 Ala. App. 115, 30 So.2d 462 (1947); Hall v. State, 171 Ark. 787, 286 S.W. 1026 (1926); Bradford v. People, 22 Colo. 157, 43 P. 1013 (1896); State v. Barnard, 176 Minn. 349, 223 N.W. 452 (1929); Commonwealth v. Craig, 19 Pa.Super. 81 (1902); State v. Vroman, 45 S.D. 465, 188 N.W. 746 (1922); Long v. State, 120 Tex.Cr.R. 373, 48 S.W.2d 632 (1931).

vant fact is and must be but a part of the whole case. Nor are we able to draw the fine distinction that the accused may give testimony with his lips or by gestures, and be cross-examined as to same, but that he may not be asked to give manual demonstration of matters material."

We think this approach and solution to the problem is sound and logical.

This however does not mean the accused may be required to perform any and all physical acts or physical demonstrations during the trial in the presence of the jury. Some consideration must be given to the right of the accused to a fair and impartial trial. State v. Van Bogart, 85 Ariz. 63, 331 P.2d 597 (1958); State v. Singleton, 66 Ariz. 49, 182 P.2d 920 (1947).

In some cases particular acts or exhibitions required of a defendant, after he had taken the witness stand, have been held violative of his right to a fair and impartial trial. State v. Thorne, 39 Utah 208, 117 P. 58 (1911); State v. Storm, 125 Mont. 346, 238 P.2d 1161 (1951); But cf., People v. Nye, Cal., 45 Cal.Rptr. 328, 403 P.2d 736 (1965). The right to a fair and impartial trial protects a defendant from being required to perform physical acts on the witness stand which would unjustly or improperly prejudice him. A trial is not a dramatic spectacle and to require the performance of indecent acts or requiring demonstrations that would have a tendency to degrade, humiliate, insult or disgrace the defendant would deprive him of his constitutional guarantee to a fair and impartial trial.

The principles of law discussed above applied to the facts of this case indicate defendant waived his privilege against self-incrimination by taking the witness stand and testifying on his own behalf. Thereafter, defendant was subject to cross-examination as to all matters relevant to the issues being tried. The defendant voluntarily raised the issue on direct examination, and the manual demonstration was therefore within the scope of permissible cross-examination. The physical act required of defendant did not violate his constitutional privilege of self-incrimination.

Neither was defendant deprived of a fair and impartial trial by requiring him to try on the hat during the course of the trial. The demonstration was not intended as a means of exposing the defendant to humiliation or disgrace, but had a legitimate purpose. Defendant testified on direct examination that he had owned a hat like the one found at the scene of the robbery as late as January, 1963. He, however, denied ownership of this particular hat and stated he had lost his hat previous to the date of the alleged crime.

On cross-examination he was required to put on the hat to show the hat was a fit,

and to impeach the prior testimony by the defendant that this hat did not belong to him. There was nothing in this act that would tend to degrade or humiliate the defendant and was not prejudicial to him. The physical act was not such as to shock the conscience or otherwise deprive defendant of a fair trial.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and McFARLAND, JJ., concur.